UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHYLAR COLFAX,<br><br>    Defendant. | CASE NO. CR23-5326 BHS<br><br>ORDER |

This matter is before the Court on Defendant Schylar Colfax's motion to dismiss his indictment or, in the alternative, suppress his statements associated with his arrest. Dkt. 32. The Court concludes that the warrantless arrest of Colfax within his own home was coercive and violated the Fourth Amendment. The parties are directed to submit simultaneous briefing addressing the issue of remedies consistent with this Order by Friday, August 30, 2024. The Court will address an appropriate remedy at the pretrial hearing on September 2, 2024.

ORDER - 1

# I. BACKGROUND[1]

Defendant Colfax is charged with Abusive Sexual Contact in Indian Country in violation of 18 U.S.C. §§ 2244(b) and 1153. Dkt 1. The charge arose from allegations that Colfax, a 46-year-old man, molested a 13-year-old girl (AT) when the child was home sick from school. Shortly after the incident, a member of AT's family allegedly struck Colfax in the face. Colfax then left AT's home.

Immediately after interviewing AT as well as the adults in her home after the alleged incident, police officers Butterfield and Barunda drove to Colfax's home. Colfax lives in a trailer on his parent's property approximately one mile from AT's residence.

The officers did not have a warrant for arrest. They knocked on Colfax's trailer door multiple times. Neither party asserts that the police verbally announced that they were law enforcement before the door opened. Colfax ultimately opened the door. The officers confirmed Colfax's identity, then told him he was under arrest for the alleged incident with AT. Dkt. 32 at 3 (citing Police Report at 9). The officers confronted Colfax while he remained inside the doorway of his home, and they remained outside his door. Officer Barunda instructed Colfax to turn around and place his hands behind his back. He claims Colfax did not initially agree to surrender and did so only after Officer Barunda

---

[1] The Court draws the facts about Colfax's arrest from the parties briefing at Dkts. 32, 33 and 35. The Court assumes their veracity for the purpose of this Order because the essential facts were not contradicted by either party.

ORDER - 2

drew his taser and threatened to taser him if he "continued disobeying commands." Dkt. 33 at 3–4. Colfax then allowed officers to place him in handcuffs.[2] *Id*. at 4.

Officer Barunda describes the brief interaction leading up to the arrest as follows in his report:

> [Officer] Butterfield and I [Officer Barunda] approached the door to the trailer [Mr. Colfax's residence], where I knocked multiple times. A male individual, later verbally identified as Schylar Colfax, answered the door. After confirming Schylar's identity, I informed him that he was under arrest and instructed him to turn around and place his hands behind his back. At the time, I observed that his right eye was swollen and discolored, and he had a small amount of dried blood on his nose. Schylar made the spontaneous statement, "Those are just allegations" and refused to comply with multiple allegations." [sic]

Dkt. 32 at 3 (quoting Police Report. at 9–11).

Officer Barunda placed Colfax into his patrol car and advised him of his *Miranda*[3] rights. Colfax initially did not answer whether he understood those rights. When Colfax was in the holding cell at the Neah Bay Police Jail, Officer Barunda asked again if he understood his *Miranda* rights as they had been read to him in the patrol car. Colfax acknowledged that he understood his rights. However, at the police station, he declined to provide a statement about the alleged abuse, saying only that "nothing happened." Dkt. 32 at 3.

Colfax challenges the lawfulness of the arrest and asks that the Court to either dismiss the indictment or, alternatively, "suppress all statements made by Mr. Colfax

---

[2] It is unclear from the record precisely where Colfax and the officers stood when officers handcuffed him.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

(verbal and nonverbal), as fruit of an illegal arrest." Dkt. 32 at 9. He argues that the warrantless arrest within his home was coercive and violates the Fourth Amendment. He concedes that the officers had probable cause to suspect him of having committed the alleged crime. *Id*. at 7. But he argues that this is insufficient to because the law affords more protections to people who are in their own home at the time officers attempt to make an arrest. *Id*. at 7–8. He argues that the officers were coercive when they arrested him in his home and emphasizes the fact that they had to threaten him with a taser before he consented to handcuffs. *Id*. at 8–9.

The Government contends that the arrest was lawful. Dkt. 33. It emphasizes that "Colfax freely opened the door of his residence to the police who had probable cause to arrest him" and argues that "because Colfax voluntarily exposed himself to the officers, who had lawful authority to arrest him, a seizure at his doorway based on probable cause did not violate the Constitution." *Id*. at 5.

For the reasons explained below, the Court concludes that the arrest violated the Fourth Amendment.

## II.  DISCUSSION

**A.    Fourth Amendment rights during warrantless arrests made in the defendant's residence.**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Fourth Amendment protections differ when one is in public versus in their own home. In a public setting, officers may generally arrest a person without a warrant provided they have probable cause to believe that the person committed a felony or misdemeanor in their presence. *See, e.g., Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

Searches and arrests within the defendant's home, however, are "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, (1980); *see also United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012). When officers attempt to arrest an individual who is located inside their home, probable cause alone is insufficient, they need a warrant. *Payton*, 445 U.S. at 576. There are limited exceptions to this warrant requirement. One such exception occurs when an officer has probable cause that the suspect committed a felony "plus exigent circumstances" authorizing entry into the home. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (citing *Payton*, 445 U.S. 573). Another exception is where the defendant suspect consents to a search or arrest in their home. *Vaneaton*, 49 F.3d at 1425 ("In *Payton,* the Court drew a bright line at the identifiable threshold of a protected dwelling and said such a line cannot be crossed to arrest a suspect inside, absent consent or exigent circumstances.").

The law on arrests in the defendant's residence without a warrant complicates when the defendant opens their door for the police. In general, if the police knock on the

residence's door, identify themselves clearly, and act in a "non-coercive" manner and the defendant then consents to engage with the officers, the resulting arrest or search are lawful. The Ninth Circuit in *United States v. Johnson*, 626 F.2d 753 (9th Cir.1980), instructed however that if the police resort to subterfuge or brandish weapons to get the defendant to engage with them, then there is no consent for the arrest or search and the resulting arrest violates the Fourth Amendment. In *Johnson*, officers misrepresented their identifies by using fictitious names when they knocked at the defendant's door. *Id*. at 755. They only identified themselves as law enforcement after he opened the door, and at that point they had their weapons drawn. After identifying themselves as special agents, the officers asked to talk with Johnson. *Id*. Johnson invited the agents to come into his home and agreed to talk with them. Johnson later argued that the arrest and search violated the Fourth Amendment. The Ninth Circuit agreed. It concluded that because the officers misled him with fictious names, Johnson's "initial exposure to the view and the physical control of the agents was not consensual" and that his "invitation to the agents to enter after the door was opened was hardly voluntary in light of the coercive effect of the weapons brandished by the agents." 626 F.2d at 757. The Court also clarified that where "the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons . . . it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." *Johnson*, 626 F.2d at 757. It explained that "[o]therwise, arresting officers could avoid illegal 'entry' into a home simply by remaining outside the doorway and controlling the movements of

suspects within through the use of weapons that greatly extend the 'reach' of the arresting officers." *Id*.

The Ninth Circuit placed further limitations on the "knock and talk" exception to the warrant requirement for arresting a defendant in their own home in *United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016). The officers in *Lundin* went to the defendant's home at 4:00 a.m. without a warrant but with the intent to arrest Lundin. 817 F.3d at 1154. They knocked on his door and, shortly thereafter, heard crashing noises coming from the backyard. Officers ran to the back, and from outside the fenced-in yard, ordered Lundin to come out his yard where they arrested him. *Id*. at 1155. They then searched his home where they found handguns in plain view and other incriminating evidence. *Id*. Lundin challenged the search. The Government argued that the search was legal pursuant to the "knock and talk" exception to the warrant requirement. The exception generally permits law enforcement officers to "'encroach upon the curtilage[4] of a home for the purpose of asking questions of the occupants.'" *Perea–Rey*, 680 F.3d at 1187 (quoting *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir.2001)).

The Ninth Circuit concluded that Lundin's arrest violated the Fourth Amendment. It explained that the "'knock and talk' exception to the warrant requirement does not apply when officers encroach upon the curtilage of a home with the intent to arrest the occupant." *Lundin*, 817 F.3d at 1160. It clarified, however, that it did "not hold that an

---

[4] The curtilage is the area "immediately surrounding and associated with the home" and is treated as "part of [the] home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).

officer may never conduct a 'knock and talk' when he or she has probable cause to arrest a resident but does not have an arrest warrant." *Id*. It explained that an "officer does not violate the Fourth Amendment by approaching a home at a reasonable hour and knocking on the front door with the intent merely to ask the resident questions, even if the officer has probable cause to arrest the resident." *Id*. In other words, whether officers exceeded the "implicit license" to speak with someone at the doorway of their home without a warrant is ultimately a reasonableness inquiry that includes not only the intent of the officers, but whether their conduct was reasonable under cultural norms. *Id*. at 1159.

*Lundin* relied extensively on *Florida v. Jardines*, 133 S.Ct. 1409 (2013). *Jardines* ruled that police violated the Fourth Amendment when they allowed a narcotics dog to sniff the curtilage of the defendant's home without a warrant. 569 U.S. at 1. It reasoned that the front porch is part of a home's curtilage. *Id*. at 7. Its discussion of the extent of the implied "license" for visitors to the front door and how that limits police is instructive:

> We have accordingly recognized that "the knocker on the front door is treated as an invitation or license to attempt an entry, ...." This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave... Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do."... The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose... Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search.

*Jardines*, 569 U.S. at 8–9 (internal citations omitted). *Lundin* relied on this discussion of implied licenses to reach its conclusion officers' intent to arrest when they knock at the

ORDER - 8

defendant's door without a warrant can exceed the implied license of an entryway and violate the Fourth Amendment. *Lundin*, 817 F.3d at 1160 ("Just as 'the background social norms that invite a visitor to the front door do not invite him there to conduct a search,' those norms also do not invite a visitor there to arrest the occupant." (citations omitted)).

The Ninth Circuit in *Lundin* also "noted" that its earlier decision resting on the voluntary exposure doctrine in *United States v. Vaneaton*, 49 F.3d 1423 (9th Cir.1995) "may be on infirm ground after *Jardines*." *Id*. at 1160. Because the Government in the present case relies exclusively on *Vaneaton* and the voluntary exposure doctrine, a brief overview of its facts and how *Lundin* limits its holding follows.

In *Vaneaton*, officers went to the motel where the defendant was staying without a warrant to arrest him. *Vaneaton*, 49 F.3d 1423. They knocked on the door of the defendant's motel room, but said nothing. *Id*. at 1425. The defendant saw the officers from the window in their uniforms and opened the door. *Id*. Officers confirmed his identity and arrested him. Vaneaton then consented to a search of his room. *Id*. He later challenged the arrest and search.

The Ninth Circuit held that the search and arrest were lawful. *Vaneaton* did not discuss the "knock and talk" exception to the warrant requirement. Its conclusion that the arrest was valid rested exclusively on a theory of "voluntary exposure." It reasoned because Vaneaton had voluntarily opened the door and "exposed" himself to police after first seeing them in their uniforms through the window, his exposure was sufficient consent for an arrest because "no threats or force were used by the police to get him to

ORDER - 9

open the door, and his actions were not taken in response to a claim of lawful authority." *Id*. at 1427.

*Lundin's* treatment of *Vaneaton* makes it unclear whether the voluntary exposure doctrine employed by *Vaneaton* remains good law when the police stand in the defendant's curtilage as they knock with an intent to arrest.[5] *Lundin* acknowledged that *Vaneaton* "did not expressly note the officers' purpose in knocking on the defendant's door, but it is fairly clear from our description of the facts that they intended to arrest him." *Id*. It ultimately concluded that because the officers in *Vaneaton* were "standing in the common space of a motel when they knocked, rather than in the curtilage of a home," it had "no need to overrule *Vaneaton*." *Id*. at 1161. In any event, the present case does not require the Court to reconcile *Lundin* with *Vaneaton* or decide the fate of the voluntary exposure doctrine when officers stand in the curtilage of a defendant's home as they knock. As is explained below, the arrest here is unlawful because the facts do not show that Colfax voluntarily exposed himself or otherwise consented to the arrest. The record instead shows that officers coerced Colfax's submission by brandishing and threatening him with a taser as soon as he identified himself after opening the door.

---

[5] This Court is far from the first to acknowledge the lack of clarity surrounding whether Vaneaton remains good law after Jardines and Lundin. *See, e.g.*, *Reyes v. City of Santa Ana*, No. SACV181537DOCADSX, 2019 WL 5198172, at *8 (C.D. Cal. Aug. 28, 2019), *aff'd in part, rev'd in part*, 832 F. App'x 487 (9th Cir. 2020) ("[T]here is an absence of clarity from the Ninth Circuit regarding the status of *Vaneaton's* holding").

**B.     Officers violated Colfax's Fourth Amendment rights within his own home.**

The officers warrantless arrest of Colfax in his own home violated the Fourth Amendment. The Government does not argue that exigent circumstances excused the officer's conduct. To their credit, it also does not argue that the arrest falls under the "knock and talk" exception for a warrant. That exception cannot apply because the record is clear that the officer's intent when they knocked was to arrest Colfax. *Lundin*, 817 F.3d Id. at 1160. The Government argues instead that the arrest was lawful because Colfax opened the door and "voluntarily exposed himself" to officers who had probable cause to arrest him in the doorway. Dkt. 33 at 5.

This argument fails in large part because the record is clear that officers threatened force and consequently "coerced" Colfax to submit to arrest shortly after he opened the door. The Government acknowledges that when Colfax refused to submit to arrest, "Officer Barunda drew his Taser and warned Colfax that he would use it if Colfax continued disobeying command" *Id*. at 3–4. It was only after the officer brandished his taser and threatened force that Colfax allowed the officers to handcuff him. This threat of force came almost immediately after Colfax opened the door. All that preceded it was the officers confirming his identity and then announcing they were going to arrest him and him refusing submit to until threatened with a taser. Consequently, Colfax's interaction with the agents was "hardly voluntary" in light of the effect of the taser brandished by Officer Barunda. *Johnson*, 626 F.2d at 757 (9th Cir. 1980). Additionally, the record does not establish that Colfax knew it was police on the other side of the door before he opened it. They do not claim to have verbally identify themselves, and unlike in

1    *Vaneaton*, the record here does not suggest that Colfax saw uniformed police from a
2    window before making the decision to open the door.
3            When police officers have probable cause to arrest but lack an arrest warrant at the
4    defendant's home, they need either exigent circumstances, or the defendant must
5    somehow consent. *Crapser*, 472 F.3d at 1148; *see also Lundin*, 817 F.3d at 1159. The
6    officers here had neither pre-requisite before threatening to tase Colfax.
7            The Government's argument that the "doorway of the home is a public place for
8    purposes of the warrant requirement" also fails. Dkt. 33 at 4. *Johnson* clarified that where
9    "the suspect was arrested as he stood inside his home and the officers stood outside his
10   home with drawn weapons . . . it is the location of the arrested person, and not the
11   arresting agents, that determines whether an arrest occurs within a home." *Johnson*, 626
12   F.2d at 757. That is essentially what unfolded here. The officers remained in the doorway
13   with Colfax inside until Colfax refused their command to turn around to be handcuffed,
14   and they then brandished a taser and threatened to tase him to achieve an arrest near the
15   doorway.[6]

---

[6] The Government points to this Court ruling in *United States v. Roberts*, CR16-5419 BHS, Dkt. 83, to argue that a seizure within a doorway is lawful when officers have probable cause, and the defendant opens the door. Dkt. 33 at 5. Colfax's arrest is both factually and legally distinct from *Roberts*. The officers in *Roberts* did not brandish weapons to coerce Roberts to submit to arrest. Roberts initially invited the police officers inside his home when they asked to speak with him. Additionally, the Government in *Roberts* argued that the officers met the "knock and talk" exception to the warrant requirement and had a credible argument that their intent in knocking on Roberts's door was to ask him questions. Consequently, the Court's order in *Roberts* is not instructive here.

The next question is what remedy to impose. Colfax seeks dismissal with prejudice or, in the alternative, to "suppress all statements made by Mr. Colfax (verbal and nonverbal), as fruit of an illegal arrest." Dkt. 32 at 9. The Government opposes both remedies, but does not discuss any legal authority on the topic of suppression other than to argue that Colfax's arrest was legal. The briefing by the parties on the issue of remedy is anemic. It is unclear precisely what statements Colfax seeks to suppress. And neither party provided sufficient caselaw to support their respective position. Accordingly, the Court will take up the issue of remedy at the pre-trial conference. The parties are directed to submit simultaneous briefing to clarify exactly what statements, if any, should be suppressed as a result of the illegal arrest and caselaw supporting their positions by Friday, August 30.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Colfax's motion to suppress, Dkt. 32, is **GRANTED in part**. It is granted insofar as the Court agrees that the warrantless arrest is unlawful. His motion to dismiss the indictment is **DENIED**. The issue of remedy will be addressed in simultaneous briefing and taken up at the pretrial conference.

Dated this 27th day of August, 2024.

BENJAMIN H. SETTLE
United States District Judge